## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PLATINUM FUNDING SERVICES, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 3:09cv1133 (MRK) |
| | : | |
| PETCO INSULATION CO., INC., d/b/a D & N INSULATION, CO.; INCOR GROUP, INC.; WOMCO INSULATION, INC.; PETCO REALTY, LLC; EDWARD R. PETRUCCI; KRISTEN L. PETRUCCI; SUSAN A. PETRUCCI; DENISE DEFELICE; HARRY GRODSKY & CO., INC.; TUCKER MECHANICAL, INC.; WALTER D. SULLIVAN CO., INC., | : : : : : : : : : | |
| | : | |
| Defendants. | : | |

## <u>MEMORANDUM OF DECISION</u>

Plaintiff Platinum Funding Services, LLC ("Platinum Funding") is a factoring firm. Factoring is a form of financing which involves "[t]he buying of accounts receivable at a discount." *See* Black's Law Dictionary 671 (9th ed. 2009); *see Coosemans Specialties, Inc. v. Garguilo*, 485 F.3d 701, 704 n.1 (2d Cir. 2007). However, when Platinum Funding enters into a factoring agreement with a business, Platinum Funding does not buy all of that business's accounts receivable outright. Instead, Platinum Funding buys the option to purchase specific invoices from that business. *See* Ex. 2 to Second Wattenmaker Aff. [doc. # 216-5] at 1; Black's Law Dictionary 1203 (9th ed. 2009) (defining an option as "a contractual obligation to keep an offer open for a specified period, so that the offeror cannot revoke the offer during the period").

In this case, Platinum Funding seeks to recover payments it alleges are owed to it as a result of its factoring agreements with several former clients – including, as relevant to this Memorandum of Decision, Petco Insulation Co., Inc. ("Petco Insulation") and Womco Insulation, Inc. ("Womco Insulation"). Platinum Funding also seeks to recover payments that other companies made to Petco Insulation and Womco Insulation while those businesses were receiving financing from Platinum Funding. Defendant Tucker Mechanical, Inc. ("Tucker Mechanical") is one of those companies. Tucker Mechanical did business with Petco Insulation and Womco Insulation while those two companies were receiving financing from Platinum Funding, but did not directly contract with Platinum Funding.

Pending before the Court is Tucker Mechanical's Motion for Partial Summary Judgment [doc. # 206] pursuant to Rule 56(a) of the *Federal Rules of Civil Procedure*. Platinum Funding sent notices to Tucker Mechanical directing it to send all payments on any invoices it received from Petco Insulation or Womco Insulation to Platinum Funding. Tucker Mechanical ignored those notices. The central issue raised by Tucker Mechanical's motion is whether the notices alone entitle Platinum Funding to recover payments that Tucker Mechanical made to Petco Insulation or Womco Insulation, even if those payments were made on invoices that Platinum Funding never actually purchased. For the reasons set forth below, the Court agrees with Tucker Mechanical that the notices alone do not entitle Platinum Funding to recover from Tucker Mechanical, and therefore GRANTS Tucker Mechanical's motion.

**I.**

Because this case is currently at the summary judgment stage, the Court sets forth the facts in the light most favorable to Platinum Funding, the nonmoving party here. *See, e.g.*, *DeFabio v. E. Hampton Union Free Sch. Dist.*, 623 F.3d 71, 74 (2d Cir. 2010) (per curiam).

Unless the Court notes otherwise, the facts set forth in this Memorandum of Decision are undisputed.

On February 21, 2006, Petco Insulation and Womco Insulation, along with a third Defendant, Incor Group, Inc. ("Incor Group"), entered into a factoring agreement ("the First Agreement") with Platinum Funding. *See* Ex. 2 to Second Wattenmaker Aff. [doc. # 216-5]. The First Agreement provided:

> Sellers [Petco Insulation and Womco Insulation] will tender to Platinum certain of Sellers' invoices to be rendered to Sellers' customers ("Account Debtors") with respect to goods sold and delivered to, or services performed for, such Account Debtors (individually, an "Account Receivable" and collectively, the "Accounts Receivable"). Such invoices shall be delivered by Platinum to the respective Account Debtors, in accordance with the standard billing procedures of Platinum, together with or after notice from Sellers and/or Platinum to such Account Debtors of the irrevocable assignment to Platinum of payment thereunder. Platinum will conduct such examination and verification of the invoices so tendered, and such credit investigations of such Account Debtors, as Platinum considers necessary or desirable, and *will notify Sellers as to which of the individual Accounts Receivable so tendered, if any, Platinum elects to purchase*. Platinum shall at all times have the absolute right in its sole discretion to reject any or all of the Accounts Receivable, whether or not Platinum has previously purchased Accounts Receivable from Sellers or previously purchased Accounts Receivable of any Account Debtor.

*Id.* at 1 (emphasis added). The First Agreement further provided that "[t]hose Accounts Receivable which Platinum elects to purchase from Sellers shall be purchased upon the terms and subject to the conditions of separate Purchase and Sale Agreements." *Id.* at 2.[1]

---

[1] The First Agreement included a number of other terms which may be relevant later on in this case. For example, it provided that if Petco Insulation or Womco Insulation "receive[d] any collections or other proceeds of the Accounts Receivable assigned to Platinum, Sellers shall immediately deliver such payments . . . to Platinum," and that "[f]ailure to deliver such payments shall be deemed a default" on related security agreements with Platinum Funding. Ex. 2 to Second Wattenmaker Aff. [doc. # 216-5] at 5. However, Platinum Funding has not made any arguments based on those other terms in opposition to the pending motion. Nor has it made any arguments based on the terms in the related security agreements. The Court therefore need not examine them in further detail here.

Petco Insulation and Womco Insulation entered into a second factoring agreement ("the Second Agreement") with Platinum Funding on February 28, 2008. *See* Ex. 2 to Second Wattenmaker Aff. [doc. # 216-6]. The terms in the Second Agreement that are relevant for purposes of resolving the pending motion are identical to the terms in the First Agreement. *See, e.g.*, *id.* at 1 ("Platinum will conduct such examination and verification of the invoices so tendered, and such credit investigations of such Account Debtors, as Platinum considers necessary or desirable, and will notify Sellers as to which of the individual Accounts Receivable so tendered, if any, Platinum elects to purchase."). Petco Insulation, Womco Insulation, and Platinum Funding also agreed to amend the terms of the Second Agreement on September 15, 2008. *See* Ex. 3 to Second Wattenmaker Aff. [doc. # 216-7]. But again, the amendments do not appear to have changed the terms that are relevant for purposes of resolving the pending motion, and in any case, neither party has made any argument based on the amendments.

Tucker Mechanical is a mechanical contractor that has worked on numerous projects with Petco Insulation; with Petco Insulation's subdivision D & N Insulation, Inc. ("D & N Insulation"); and with Womco Insulation. On February 22, 2006, the day after Petco Insulation entered into the First Agreement with Platinum Funding, Account Executive Santo A. Caruso at Platinum Funding sent a letter to Tucker Mechanical informing it of the following: "PLATINUM FUNDING SERVICES LLC, as factor, is the irrevocable assignee of PETCO INSULATION CO., INC. (the 'Company') for all invoices which are now due and which in the future will become due to the company." Ex. B to Levy Aff. [doc. # 209-1] at 12. The following letter from Petco Insulation's President, Edward R. Petrucci, was attached: "In order to manage the growth of our business and plan for our continued success, we have entered into a financing arrangement with PLATINUM FUNDING SERVICES LLC. You are hereby authorized and instructed to pay

the full amount of all invoices now due, and all invoices which in the future are submitted or become due and payable, directly and solely to: PLATINUM FUNDING SERVICES LLC . . . ." *Id.* at 13. The same day, Mr. Caruso sent an essentially identical letter to Tucker Mechanical regarding Womco Insulation, *see* Ex. C to Levy Aff. [doc. # 209-1] at 18, along with an attached letter from Womco Insulation's President, Kristen L. Petrucci. *See id.* at 19.

Tucker Mechanical continued to do business with D & N Insulation – again, Petco Insulation's subdivision – and with Womco Insulation after receiving the two notices from Platinum Funding. First, Tucker Mechanical hired Womco Insulation to work on the construction of the Mohegan Government Center in Uncasville, Connecticut ("the Mohegan Project"). Womco Insulation apparently issued invoices related to the Mohegan Project. However, Womco Insulation never actually performed any work on the Mohegan Project, and Tucker Mechanical therefore never made any payments to Womco Insulation. Second, Tucker Mechanical made payments to D & N Insulation and Womco Insulation based on the following three invoices: Invoice No. 10123831 from D & N Insulation, for $37,000; Invoice No. 10123927 from D & N Insulation, for $23,125; and Invoice No. 30100731 from Womco Insulation, for $53,650.00. It is undisputed that Tucker Mechanical made the three payments after receiving the notices.

However, there is no evidence in the record that Platinum Funding ever exercised its option to purchase those three invoices. Platinum Funding explicitly acknowledges that it did not purchase the two invoices from D & N Insulation. Platinum Funding's position with regard to the invoice from Womco Insulation is somewhat perplexing. In its Local R. 56(a)1, Platinum Funding admitted that it did not purchase Womco Invoice No. 30100731 for $53,650. *See* Platinum Funding's Local R. 56(a)2 Statement [doc. # 210] ¶ 7 ("Admitted."). But in the same Local R. 56(a)2 Statement, Platinum Funding stated: "Tucker's Motion with respect to the third

invoice No. 30100731 in the amount of $53,650 is premature. Platinum has not conceded that it did not purchase this invoice and, as such there is a dispute of material fact with respect to such invoice." *Id.* at 2. At oral argument on the pending motion, counsel for Plaintiff Funding admitted that his client has no evidence in its own records that it ever purchased the invoice from Womco Insulation, and that it has not located any such evidence through discovery. While Platinum Funding's counsel asserted at the oral argument that his client still has a "subjective belief" that it purchased the invoice from Womco Insulation, there is no objective evidence in the record to support that subjective belief.

Platinum Funding filed its Complaint [doc. # 1] in this case on July 17, 2009, and its Amended Complaint [doc. # 59] on October 20, 2009. The Amended Complaint asserts twenty different claims against numerous defendants. The only claims at issue here are Platinum Funding's claims against Tucker Mechanical for breach of contract; for unjust enrichment; for liability pursuant to Article 9, Section 406 of the Uniform Commercial Code ("UCC"); and for account stated. Those claims are set forth in the Fourteenth, Fifteen, Sixteenth, and Seventeenth Counts of the Amended Complaint, respectively. On January 26, 2011, Tucker Mechanical moved for partial summary judgment on those four claims insofar as they relate to the invoices from the Mohegan Project and the three payments that Tucker Mechanical made to D & N Insulation and Womco Insulation.

Two further details about the procedural background of this case are relevant to the pending motion. The first relates to a different Defendant's Motion for Partial Summary Judgment, *see* Walter D. Sullivan Co.'s Mot. for Partial Summary J. [doc. # 149], which the Court granted in part and denied in part on July 27, 2010. *See* Order [doc. # 187]. The second relates to the lengthy period that the Court has already allowed for discovery in this case.

The Walter D. Sullivan Co. ("Sullivan"), like Tucker Mechanical, did business with Platinum Funding's clients, but did not directly contract with Platinum Funding. On May 12, 2010, Sullivan filed a Motion for Partial Summary Judgment on Platinum Funding's claims against it for breach of contract; for unjust enrichment; for liability pursuant to UCC § 9-406; and for account stated, as set forth in the Fourteenth, Fifteen, Sixteenth, and Seventeenth Counts of the Amended Complaint, respectively. Like Tucker Mechanical, Sullivan argued that Platinum Funding was attempting to collect on invoices for unfinished work on the Mohegan Project. *See* Mem. in Supp. of Sullivan's Mot. for Partial Summary J. [doc. # 149-1] at 4. In addition, Sullivan argued that it was not liable to Platinum Funding for payments it made to Womco Insulation on invoices for Womco Insulation's work on projects at Foxwoods Resort Casino and at Hartford Public High School, *see* Objection to Sullivan's Mot. for Partial Summary J. [doc. # 167] at 10, because Platinum Funding never purchased those particular invoices from Womco Insulation. Reply in Supp. of Sullivan's Mot. for Partial Summary J. [doc. # 184] at 4-5.

On July 27, 2010, the Court held an on-the-record telephonic conference with the parties to discuss Sullivan's motion. After the telephonic conference, the Court issued a brief electronic order granting Sullivan's motion in part and denying it in part. *See* Order [doc. # 187]. The Court noted in the Order that during the telephonic conference, Platinum Funding conceded that Womco Insulation did not work on the Mohegan Project and "acknowledged that . . . [it] did not purchase receivables for the Foxwoods or Hartford Public School projects." *Id.* The Court did not provide any further reasoning in support of its decision to grant in part and deny in part Sullivan's motion.

As mentioned above, Tucker Mechanical filed its pending Motion for Partial Summary Judgment on January 26, 2011. Under the first Case Management Order [doc. # 61] in this case,

discovery was to conclude by November 30, 2010. However, on September 10, 2010, the parties jointly moved to extend the discovery deadline. *See* Joint Mot. for Extension [doc. 196]. The Court granted that motion and agreed to extend the discovery deadline until March 30, 2011. *See* Order [doc. # 198]. And on February 22, 2011, the parties again jointly moved to extend the discovery deadline. *See* Joint Mot. for Extension [doc. # 211]. The Court granted that motion and agreed to extend the discovery deadline yet again, until August 31, 2011. *See* Am. Case Management Order [doc. # 213].[2] Thus, although the discovery deadline is still several months away, by the time the Court held oral argument on the pending motion on April 27, 2011, the parties had already had more than twenty-one months to engage in discovery.

## II.

This Court must apply a familiar standard when resolving a motion for summary judgment. Summary judgment is appropriate only when the "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" submitted to the Court "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(1)(A); Fed. R. Civ. P. 56(a). "As to materiality, the substantive law governing the case will identify those facts that are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Summary judgment must be rejected "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). However, the party against whom summary judgment is sought cannot prevail by "simply show[ing] that there is some metaphysical doubt as to the material

---

[2] As the Court informed the parties at oral argument, the Court is not likely to grant any further extensions of the discovery deadline in this case.

facts," and instead "must come forward with specific facts showing that there is a *genuine issue for trial." Matshushita v. Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 & n.11 (1986) (quotation marks and citations omitted).

## III.

As discussed above, Tucker Mechanical seeks partial summary judgment on Platinum Funding's claims for breach of contract; for unjust enrichment; for liability pursuant to UCC § 9-406; and for account stated, as set forth in the Fourteenth, Fifteen, Sixteenth, and Seventeenth Counts of the Amended Complaint, respectively. Tucker Mechanical only seeks summary judgment on those claims insofar as they are based on: (1) the invoices Womco Insulation sent to Tucker Mechanical for work on the Mohegan Project; (2) Tucker Mechanical's payment to D & N Insulation on Invoice No. 10123831, for $37,000; (3) Tucker Mechanical's payment to D & N Insulation on Invoice No. 10123927, for $23,125; and (4) Tucker Mechanical's payment to Womco Insulation on Invoice No. 30100731, for $53,650.00. The Court will begin with a brief discussion of the Mohegan Project invoices, turn next to the D & N Insulation invoices, and conclude with the remaining Womco Insulation invoice.

## A.

Tucker Mechanical's first argument in support of the pending motion is that Platinum Funding has no right to recover on the unpaid invoices from Womco Insulation's work on the Mohegan Project. Platinum Funding conceded nearly a year ago in response to Sullivan's Motion for Partial Summary Judgment that Womco Insulation never performed any work on the Mohegan Project. In response to the pending motion, Platinum Funding again acknowledges that Womco Insulation did not perform any work on the Mohegan Projects, and that it thus has no right to recover on the Mohegan Project invoices. The Court therefore GRANTS summary

judgment in Tucker Mechanical's favor on Platinum Funding's claims for breach of contract; for unjust enrichment; for liability pursuant to UCC § 9-406; and for account stated (as set forth in the Fourteenth, Fifteen, Sixteenth, and Seventeenth Counts of the Amended Complaint) insofar as those claims are based on Womco Insulation's invoices for work on the Mohegan Project.

### B.

Tucker Mechanical's second argument in support of the pending motion is that Platinum Funding has no right to recover the payment it made to D & N Insulation on Invoice No. 10123831, for $37,000, or the payment it made to D & N Insulation on Invoice No. 10123927, for $23,125, since Platinum Funding admits it did not purchase from Petco Insulation, D & N Insulation's parent company. Although Platinum Funding concedes that it did not buy the invoices, it insists that it can still recover the payments because it sent Tucker Mechanical a notice on February 22, 2006 that directed it "to pay the full amount of *all* invoices now due, and *all* invoices which in the future are submitted or become due and payable" to Platinum Funding. Ex. B to Levy Aff. [doc. # 209-1] at 13 (emphasis added). The Court will first consider Tucker Mechanical's assertion that the law of the case doctrine precludes Platinum Funding's argument, and then turn to consider the merits of Platinum Funding's argument.

### 1.

As a preliminary matter, the Court cannot accept Tucker Mechanical's assertion that as a result of the Court's Order granting in part and denying in part Sullivan's Motion for Partial Summary Judgment, it is now the law of the case that Platinum Funding cannot recover payments made to its former clients on invoices that Platinum Funding did not exercise its option to purchase. The law of the case is "an amorphous concept." *Pepper v. United States*, 131 S. Ct. 1229, 1250 (2011) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). "As most

commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona*, 460 U.S. at 618. The law of the case doctrine "does not rigidly bind a court to its former decisions, but is only addressed to its good sense," and "is even less binding in the context of interlocutory orders." *United States v. Brown*, 623 F.3d 104, 111 (2d Cir. 2010) (quotation marks and citations omitted); *see also Pepper*, 131 S. Ct. at 1250 ("Th[e] doctrine 'directs a court's discretion, [but] does not limit the tribunal's power.'" (quoting *Arizona*, 460 U.S. at 618)).

When the Court granted in part and denied in part Sullivan's Motion for Partial Summary Judgment, it did so on the basis of an argument that was first presented in a reply brief. *See* Reply in Supp. of Sullivan's Mot. for Partial Summary J. [doc. # 184] at 4-5. Sullivan had initially been confused about which payments on which specific invoices Platinum Funding believed it was entitled to recover from Sullivan. *See* Mem. in Supp. of Sullivan's Mot. for Partial Summary J. [doc. # 149-1] at 7-8. Platinum Funding clarified in its response to Sullivan's motion that it believed it could recover payments that Sullivan made to Womco Insulation for its work on the Foxwoods Resort Casino and at Hartford Public High School. *See* Objection to Sullivan's Mot. for Partial Summary J. [doc. # 167] at 10. At that point, Sullivan objected that there was no basis for Platinum Funding to recover on those invoices because Platinum Funding never exercised its option to purchase those particular invoices. *See* Reply in Supp. of Sullivan's Mot. for Partial Summary J. [doc. # 184] at 4-5.

Under that circumstance, and in light of the fact that the law of the case doctrine is not a mandatory doctrine, the Court does not believe it is necessarily bound by its prior legal conclusion. Platinum Funding had no real opportunity to explain why it believed it had a right to recover on invoices that it did not purchase from its clients. Although Platinum Funding did not

make any serious attempt to explain its theory during the oral argument on Sullivan's motion, the Court only held a short, telephonic oral argument with the parties, rather than a full-scale oral argument in the courtroom. The Order in which the Court reached its legal conclusion was not only an interlocutory order, *see Brown*, 623 F.3d at 111, but a brief electronic order. The Court issued a brief electronic order rather than a more detailed order based on its understanding that there was no longer any real dispute between the parties regarding Sullivan's motion.

**2.**

That said, the legal basis for Platinum Funding's argument that it can recover payments that Tucker Mechanical and other account debtors made to its clients based on invoices that Platinum Funding never purchased remains unclear to the Court. In its memorandum in opposition to the pending motion, Platinum Funding chided Tucker Mechanical for overlooking the distinctions between its claims for breach of contract; for unjust enrichment; for liability pursuant to UCC § 9-406; and for account stated. *See* Objection to Tucker Mechanical's Mot. for Partial Summary J. [doc. # 209] at 8. Platinum Funding then asserted without qualification: "[T]he right to recover misdirected payments is purely a claim under Section 9-406 of the UCC, and so Tucker's arguments regarding the other Counts is misplaced." *Id.* As a result of that unqualified assertion – which the Court believes constituted a waiver of Platinum Funding's right to rely on any theory other than a UCC § 9-406 theory – Tucker Mechanical submitted a reply brief to the Court that focused *exclusively* on the UCC § 9-406 arguments in Platinum Funding's memorandum in opposition. *See* Reply in Supp. of Tucker Mechanical's Mot. for Partial Summary J. [doc. # 216]. Platinum Funding's unqualified assertion not only denied Tucker Mechanical's counsel any opportunity to make arguments based on the unjust enrichment theory

in a reply brief, but also denied Tucker Mechanical's counsel the ability to prepare to discuss the unjust enrichment theory at oral argument.

At the oral argument held on April 27, 2011, however, Platinum Funding suddenly changed its legal theory. At oral argument, Platinum Funding's counsel asserted, again without qualification, that his client could only recover Tucker Mechanical's payments under an unjust enrichment theory. Indeed, Platinum Funding's counsel specifically acknowledged that his client could not recover those payments under the Sixteenth Count in the Amended Complaint, which sets forth the UCC § 9-406 claim against Tucker Mechanical and others. The Court believes that counsel's concession at oral argument constituted a waiver of Platinum Funding's right to recover on any theory other than an unjust enrichment theory. But as the Court has already discussed, Platinum Funding also waived its right to rely on that particular theory in is opposition brief.

It is undisputed, however, that Platinum Funding cannot recover on the two D & N Insulation invoices based on a breach of contract or account stated theory. The Court therefore GRANTS summary judgment in Tucker Mechanical's favor on Platinum Funding's claims for breach of contract and for account stated, as set forth in the Fourteenth and Seventeenth Counts of the Amended Complaint, insofar as those claims are based on the D & N Insulation invoices.

Despite the fact that Platinum Funding has now conceded away its ability to rely on *either* a UCC § 9-406 theory *or* an unjust enrichment theory – the latter of which, the Court emphasizes, Platinum Funding has never even attempted to brief – the Court will nonetheless consider the merits of Platinum Funding's two arguments. Neither finds any support in Connecticut case law, or in any other State's case law. Furthermore, both arguments are contrary to common sense and public policy, and also in conflict with both the language of Platinum

Funding's factoring agreements and the text of UCC § 9-406 and its Connecticut equivalent, Connecticut General Statutes § 42a-9-406. The Court emphatically rejects both arguments.

**a.**

The Court begins with Platinum Funding's UCC § 9-406 argument. UCC § 9-406, which is codified in this State at Connecticut General Statutes § 42a-9-406, sets forth "the general rule concerning an account debtor's right to pay [an] assignor until the account debtor receives appropriate notification" that the assignor has assigned its right to receive payments from the account debtor to someone else – for example, to a factoring firm. UCC Comment 2, Conn. Gen. Stat. Ann. § 42a-9-406 (West 2009); *see* Conn. Gen. Stat. § 42a-9-406(a) ("An assignor who receives payment after notification is given must return the payment to the account debtor or forward the payment to the assignee."). The provision "makes it explicit that payment to [an] assignor before notification, or payment to the assignee after notification, discharges the [account debtor's] obligation." *Id.*

When a factoring firm – here, Platinum Funding – provides an account debtor – here, Tucker Mechanical – with a notice under UCC § 9-406 and Connecticut General Statutes § 42a-9-406, the notice ensures that if the factoring firm later sues the account debtor for misdirecting payments to the factoring firm's assignor, the account debtor will not be able to assert in defense that it already paid the assignor. *See, e.g.*, *Platinum Funding Services, LLC v. Magellan Midstream Partners, Ltd. Partnership*, 49 Conn. L. Rptr. 717, 2010 WL 238783, at *3 (Super. Ct. 2010); *Brookridge Funding Corp. v. Northwestern Human Services*, 175 F. Supp. 2d 355, 362 (D. Conn. 2001) ("The next issue is whether the Notice is an enforceable waiver of defenses . . . under Conn. Gen. Stat. § 42a-9-206 . . . ."). Here, assuming that the notice Platinum Funding

provided to Tucker Mechanical complied with all relevant legal requirements,[3] Tucker Mechanical would be liable to Platinum Funding for the amounts of any invoices that Petco Insulation assigned to Platinum Funding, even if Tucker Mechanical could prove that it paid Petco Insulation on those particular invoices.

But that is all that such a notice accomplishes. The language of UCC § 9-406 and Connecticut General Statutes § 42a-9-406 presumes that an "assignor" has already assigned its right to receive payment from an account debtor to an "assignee," such as a factoring firm. *See* Black's Law Dictionary 133 (9th ed. 2009) (defining "assign" as "to transfer rights or property"). Here, the only right that Petco Insulation assigned to Platinum funding was *an option* to purchase invoices from Petco Insulation. *See* Ex. 2 to Second Wattenmaker Aff. [doc. # 216-5] at 1; Ex. 2 to Second Wattenmaker Aff. [doc. # 216-6] at 1. The First Agreement and Second Agreement explicitly required Petco Insulation and Platinum Funding to execute *separate* Purchase and Sale Agreements whenever Platinum Funding decided to exercise its option to purchase a particular invoice. Ex. 2 to Second Wattenmaker Aff. [doc. # 216-5] at 2; Ex. 2 to Second Wattenmaker Aff. [doc. # 216-6] at 2. Those separate purchase and sale agreements – not the First Agreement, or the Second Agreement, or the notice – were what would have legally transferred the right to receive payment on those invoices to Platinum Funding.

The parties now agree that no purchase and sale agreements were ever executed with regard to the two D & N Insulation invoices at issue here. Because the right to receive payments on those particular invoices was never *assigned* to Platinum Funding, UCC § 9-406 and Connecticut General Statutes § 42a-9-406 are of no help to Platinum Funding's cause.

Counsel for Platinum Funding suggested at oral argument that there is no case law to

---

[3] The Court assumes without deciding that the notice complied with the requirements set forth in UCC § 9-403(b) and Connecticut General Statutes § 42a-9-406(b).

support Tucker Mechanical's position regarding UCC § 9-406. But the Court is not at all persuaded by that suggestion. It is Platinum Funding's burden in a civil case to show that it is entitled to recovery; when a company opposes a motion for summary judgment filed in this Court, it must demonstrate to this Court that there is a basis under which "a reasonable jury could return a verdict for" the plaintiff. *Williams*, 453 F.3d at 116. Even at the earlier motion to dismiss stage, a plaintiff can only survive a defendant's motion to dismiss if he or she can persuade this Court that he or she may be able to "prove some set of facts in support of" a valid legal claim. *Freedom Holdings, Inc. v. Cuomo*, 624 F.3d 38, 51 (2d Cir. 2010). Here, Platinum Funding has not cited a single case –from Connecticut or from any other State – in opposition to Tucker Mechanical's motion that could fairly be read as supporting Platinum Funding's novel legal theory of recovery. As a general matter, this Court does not make it its business to adopt entirely new state-law theories for recovery. The Court elects not to do so here.

Indeed, the case which Platinum Funding's counsel invoked at oral argument as the case that best supports his client's position, *IIG Capital LLC v. Archipelago, LLC*, 829 N.Y.S.2d 10 (App. Div. 2007), offers no help at all to Platinum Funding. Like Platinum Funding, the plaintiff in that case was a factoring company that purchased *some*, but not all, of its client's accounts receivable. *See id.* at 12. The account debtor defendant argued that the plaintiff's breach of contract and account stated claims against it should be dismissed because the factoring firm plaintiff failed to allege in its complaint that it had ever purchased or been assigned its client's rights to collect from that particular account debtor. *See id.* The trial court rejected that argument and denied the defendant's motion to dismiss the breach of contract and account stated claims. *See id.* at 11. The appellate court affirmed, reasoning that the factoring firm plaintiff's complaint did in fact allege that it had been assigned rights to collect from the account debtor defendant,

16

and that the defendant had not introduced any evidence to clearly refute the plaintiff's factual allegations. *See id.* at 12-13.

In *IIG Capital*, the factoring firm plaintiff, the account debtor defendant, the trial court, and the appellate court all proceeded on the common-sense assumption that a factoring firm has no right to recover from an account debtor unless it has been *assigned* a specific legal right to recover on specific invoices from a particular account debtor. *See id.* at 14 (noting that there were "unresolved disputes regarding whether defendants' accounts were among those assigned to plaintiff pursuant to the factoring agreement"). No one – not the factoring firm, not the account debtor, and not a single judge on either the trial court or the appellate court – questioned that common-sense assumption. This Court's research has not revealed any case from any jurisdiction in which any factoring firm has ever attempted to challenge that common-sense assumption.

The *IIG Capital* trial court refused to dismiss the plaintiff's claims because the factoring firm plaintiff had satisfied its burden at the pleading stage to allege a set of facts that would entitle it to recover from the account debtor defendant – namely, that its client had assigned it the right to collect from that particular account debtor. *See id.* at 11. The appellate court affirmed for the same reason. *See id.* at 12-13. But here, at the summary judgment stage, it is not enough for Platinum Funding to allege that Petco Insulation – or D & N Insulation – assigned it the right to recover on the two invoices. Instead, Platinum Funding must present *evidence* that it was assigned rights to received payments on the invoices, and it has not done so. *See Matshushita*, 475 U.S. at 586 & n.11.

Because Platinum Funding admits that it did not exercise its option to purchase the right to receive payment on the two invoices at issue here from Petco Insulation, Tucker Mechanical is entitled to summary judgment. The Court GRANTS summary judgment on Platinum Funding's

claim for liability pursuant to UCC § 9-406, as set forth in the Sixteenth Count of the Amended Complaint, insofar as it is based on the payments that Tucker Mechanical made on the two D & N Insulation invoices.

**b.**

The Court now turns to consider Platinum Funding's alternative unjust enrichment theory, again noting that Platinum Funding made no attempt whatsoever to brief that theory in response to Tucker Mechanical's Motion for Partial Summary Judgment. The elements of an unjust enrichment claim under Connecticut law are well established. *See Haynes Material Co. v. Scott*, No. CV095021833S, 2011 WL 14683560, at *4 (Conn. Super. Ct. Mar. 24, 2011). A plaintiff asserting an unjust enrichment claim must show: (1) that the defendant received a benefit; (2) that the defendant unjustly did not pay the plaintiff for the benefit; and (3) that the plaintiff suffered a detriment as a result of the defendant's failure to pay the plaintiff. *See Polverari v. Peatt*, 29 Conn. App. 191, 200-01 (1992). Because the doctrine of unjust enrichment is grounded in a theory of restitution, the measure of damages for an unjust enrichment claim is ordinarily based on the amount of benefit retained by the defendant, not the amount of loss suffered by the plaintiff. *See Schirmer v. Souza*, 126 Conn. App. 759, 765, 771 (2011).

Not only did Platinum Funding fail to brief the unjust enrichment issue, it also utterly failed to introduce any specific evidence which would permit a reasonable jury to find Tucker Mechanical liable on an unjust enrichment theory based on the payments that it made on the two D & N Insulation invoices at issue here. The evidence does show that Tucker Mechanical received a benefit – namely, it received the benefit of D & N Insulation's labor. But there is no evidence that would allow a reasonable jury to conclude that Tucker Mechanical's failure to pay *Platinum Funding* for that labor was "unjust" in any way. Since Platinum Funding never

18

purchased a right to receive such a payment, Tucker Mechanical's payment to D & N Insulation – which retained a legal right to receive such a payment – was perfectly just, the notice from Petco Insulation notwithstanding.

Further, Platinum Funding has not introduced any evidence that would permit a reasonable jury to conclude that any detriment that Platinum Funding suffered was caused by Tucker Mechanical. Presumably, the detriment that Platinum Funding suffered was that it did not receive the difference between the full value of D & N Insulation invoices and whatever discounted price that Platinum Funding would have paid to Petco Insulation for those invoices under the two factoring agreements. But Platinum Funding had an option to purchase those two invoices. It simply chose not to exercise that option. There is no evidence to the contrary.

Finally, Platinum Funding has failed to introduce any evidence that would entitle it to recover any damages from Tucker Mechanical. Tucker Mechanical paid for D & N Insulation's labor, and there is no indication in the summary judgment record that it retained any benefit from D & N Insulation over and above what it paid to D & N Insulation. In sum, because Tucker Mechanical paid D & N Insulation – which retained a right to receive payment on those invoices – requiring Tucker Mechanical to pay Platinum Funding now would actually unjustly enrich Platinum Funding, not the other way around.

*IIG Capital* provides no support for Platinum Funding's alternative unjust enrichment theory. *See* 829 N.Y.S.2d at 10. In that case, the trial court agreed to dismiss the factoring firm's unjust enrichment and quantum meruit claims against the account debtor defendant. *See id.* at 11. It is true that the appellate court reversed the portion of the trial court's order that dismissed the unjust enrichment and quantum meruit claims. *See id.* at 13. But it did so *only* because it concluded that, in light of "the existing, unresolved dispute regarding whether defendants'

accounts were among those assigned to plaintiff pursuant to the factoring agreement," dismissal of the unjust enrichment and quantum meruit claims was premature. *See id.* at 14.

Here, Platinum Funding has conceded that it did not acquire any right to receive payment from Tucker Mechanical on the two D & N Insulation invoices, and Tucker Mechanical is thus entitled to summary judgment. The Court therefore GRANTS summary judgment in Tucker Mechanical's favor on Platinum Funding's unjust enrichment claim, as set forth in the Fifteenth Count of the Amended Complaint, insofar as it is based on the two D & N Insulation invoices.

## C.

Tucker Mechanical's third and final argument in support of the pending motion is that Platinum Funding has failed to produce any evidence that it purchased Invoice No. 30100731 from Womco Insulation, for $53,650.00. Further, Tucker Mechanical claims that Platinum Funding's admission in its Local Rule 56(a)2 Statement that it did not purchase that invoice is a binding judicial admission, even if it was the result of a scrivener's error, as Platinum Funding's counsel suggested at oral argument. *See Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.*, 440 F.3d 571, 578 (2d Cir. 2006).[4] As should be clear from the discussion above, if Platinum Funding cannot produce specific evidence that it purchased the right to receive payment on that particular invoice from Womco Insulation, then it cannot recover from Tucker Mechanical based on the payment it made to Womco Insulation on that particular invoice on *any* of its four legal theories.

---

[4] In *Gibbs*, the Second Circuit held that an admission in "any pleading . . . binds the defendant throughout . . . litigation." 440 F.3d at 578. Tucker Mechanical's counsel suggested at oral argument that a Local Rule 56(a)2 is a "pleading" and thus is subject to that rule. He is incorrect. *See* Fed. R. Civ. P. 7(a) ("*Only* these pleadings are allowed: (1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer." (emphasis added)); 5 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1183, at 19 (3d ed. 2004) ("Federal Rule 7(a) . . . enumerate[s] all of the pleadings permitted in federal practice.").

It does appear that Tucker Mechanical's admission that it did not purchase the invoice from Womco Insulation was a mistake. In the seventh paragraph of its Local Rule 56(a)1 Statement of material facts not in dispute, Tucker Mechanical asserted that Platinum Funding did not purchase either of the two D & N Insulation invoices or the Womco Insulation invoice. *See* Tucker Mechanical's Local R. 56(a)1 Statement [doc. # 206-3] ¶ 7 ("Platinum's claim . . . includes three Invoices that Platinum did not purchase from any of the Companies, including: (a) Invoice No. 10123831 from . . . D&N . . . for $37,000; (b) Invoice No. 10123927 from D&N for $23,125; and (c) Womco Invoice No. 30100731 for $53,650."). In its Local Rule 56(a)2 Statement in response, Platinum Funding admitted the truth of that entire paragraph. *See* Platinum Funding's Local R. 56(a)2 Statement [doc. # 210] ¶ 7 ("Admitted."). But on the same page of the very same document, in a paragraph describing the factual issues that it believed were still in dispute, Platinum Funding asserted that it *did not* concede that it never purchased the Womco Insulation invoice. *See id.* at 2 ("Tucker's Motion with respect to the third invoice No. 30100731 in the amount of $53,650 is premature. Platinum has not conceded that it did not purchase this invoice . . . .").

Because Platinum Funding's admission appears to be the result of a mistake, it is not necessarily binding on the Court. *See Ciacciarella v. Bronko*, 613 F. Supp. 2d 262, 266 (D. Conn. 2009). The Court will therefore not resolve the Womco Insulation invoice issue on the ground that Platinum Funding has conceded that it did not purchase the invoice. Nevertheless, the Court still believes that Tucker Mechanical's motion is not premature and that it is entitled to summary judgment on Platinum Funding's claims for breach of contract; for unjust enrichment; for liability pursuant to UCC § 9-406; and for account stated, as set forth in the Fourteenth,

Fifteen, Sixteenth, and Seventeenth Counts of the Amended Complaint, insofar as those claims are based on the payment that Tucker Mechanical made on the Womco Insulation invoice.

While the discovery period in this case has not yet officially concluded, by the time the Court held oral argument on the pending motion on April 27, 2011, the parties had already had more than twenty-one months to engage in discovery. Rule 56(b) permits a defendant to file a motion for summary judgment "at any time until 30 days after the close of discovery." *Id.; see also* 10A Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2718, at 300 (3d ed. 1998) (noting that the phrase "at any time" presumably means "after a pleading stating a claim" is served on the defendant). If a defendant moves for summary judgment early – that is, before the period for discovery has ended – and the relevant facts are not yet known to the plaintiff, the plaintiff must submit affidavits or declarations detailing the *specific reasons* why the plaintiff cannot present facts essential to justify its opposition. *See* Fed. R. Civ. P. 56(d); *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 303 (2d Cir. 2003) (setting forth the requirements for defeating a motion for summary judgment on the ground that further discovery is needed under the former Rule 56(f), now Rule 56(d)). Platinum Funding has not submitted any affidavits or declarations explaining how it expects to find proof that it purchased the Womco Insulation invoice; what efforts it has already made to find that proof; or why it has so far been unable to find that proof. *See Miller*, 321 F.3d at 303.

Absent any such affidavit or declaration, this Court has no authority to deny summary judgment on the basis of counsel's unsupported assertion that Platinum Funding has a subjective belief that it purchased the Womco Insulation invoice. *See id.* It is not particularly surprising that Platinum Funding did not submit any such affidavit or declaration – presumably, if it really did purchased that Womco Insulation invoice, Platinum Funding would have a purchase and sale

agreement reference that invoice among *its own files*. For that reason, the Court GRANTS summary judgment in Tucker Mechanical's favor on Platinum Funding's claims for breach of contract; for unjust enrichment; for liability pursuant to UCC § 9-406; and for account stated, as set forth in the Fourteenth, Fifteen, Sixteenth, and Seventeenth Counts of the Amended Complaint, insofar as those claims are based on the Womco Insulation invoice.

## IV.

In sum, the Court concludes that Platinum Funding cannot recover from Tucker Mechanical based on the Womco Insulation invoices from the Mohegan Project; that Platinum Funding cannot rely on either a UCC § 9-406 theory or an unjust enrichment theory to recover from Tucker Mechanical based on the payments that it made on the two D & N Insulation invoices which Platinum Funding never purchased; and that with regard to the remaining Womco Insulation invoice, Platinum Funding has not complied with the requirements for opposing a summary judgment motion on the ground that additional discovery is needed, as set forth in Rule 56(d). For those reason, the Court GRANTS Tucker Mechanical's Motion for Partial Summary Judgment [doc. # 22].

IT IS SO ORDERED.

/s/       Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: May 2, 2011.**